[No. 3158.]

E. F. DAVIDSON v. THE STATE.

1. ESTABLISHMENT OF PUBLIC ROADS.—The mode and manner by which public roads are established is prescribed by statute. (Revised Statutes, . Articles 4359 to 4390, inclusive.) One of the prerequisites is that the jurors appointed to lay out the road shall, before proceeding to act as such, take the oath prescribed by statute. (Revised Statutes, Article 4386.)

2. SAME—CONDEMNATION OF PRIVATE PROPERTY TO PUBLIC USE.—The rule is well established that, in order to condemn private property to public uses, the law authorizing and directing it must be strictly observed and pursued, and the performance of what the law requires is a condition precedent to the authority to condemn. A public road cannot be laid out and established without the requirements of the law in such cases having first been complied with.

3. SAME—OATH—CHARGE OF THE COURT.—Where proceedings are summary, and a court proposes to exercise extraordinary power, under a special statute prescribing its course, that course must be exactly observed. The statutory oath, which is a necessary prerequisite to the validity of the action of a jury in laying out a public road, was never taken by the jury in this case. Wherefore see the statement of the case for a requested charge on the subject which the trial court erroneously refused to give.

4. SAME—FACT CASE.—See evidence held insufficient to support a conviction for obstructing a public road.

APPEAL from the County Court of Falls. Tried below before the Hon. E. C. Stuart, County Judge.

The information charged the appellant with the offense of wilfully obstructing a public road in Falls county. A fine of fifty dollars was imposed by a verdict of guilty.

W. H. C. Lee was the first witness introduced by the State. He testified that he was the overseer of the road leading from White Rock crossing to the Bell county line, in Falls county, Texas. The defendant Davidson lives on and owns the William Lawrence survey of six hundred and forty acres, in Falls county. Within the last few days preceding this trial, and since the filing of the information herein, the witness, as road overseer, has marked the road along the line of said . Lawrence survey, so as to place the line of the survey in the centre of the road. "That is fifteen feet of the road so designated, a wire fence running along in and with the road, the fence being on the Lawrence

survey, about two hundred yards in length.  This fence was put there by the defendant after the passage of the two orders of the county commissioners' court, hereinafter mentioned."

At the time that the defendant constructed that fence no road had been marked on the ground along the line of the Lawrence survey, but the commissioners' court had already passed the orders referred to.  Previous to that time the road had run on straight through the Bierly survey, and after the change, or the passage of the said orders by the commissioners' court, the public travel had adhered to the old route, or gone through the prairie (the whole country being open), there being no kind of mark along the line of the Lawrence survey indicating a road until the witness had marked it a few days ago, since the institution of this prosecution, the fence having already been constructed.  Witness marked the road thirty feet wide, fifteen feet on each side of the line of the Lawrence survey.  This placed the fence near the centre of the road.  The witness was a member of the commissioners' court, and remembers that the defendant was present when the report of the jury of review was before the court, and when the court entered its order approving the report, changing the said road so as to run north thirty degrees west, with the Lawrence survey, instead of straight on through the Bierly survey, and the defendant was asked if he had any objection to the report and order, and he replied that he had none.  If the west line of the Lawrence survey is in the middle of the road mentioned in the indictment, then the fence is an obstruction.  Plat was here exhibited showing the location of the road before it was changed.  The order of change removed the road from its course over the Bierly survey to run with the Lawrence, north thirty degrees west.  The object of of the change was to place the road on better ground, to change it from running through land of Robert Rucker, John Buckholt, and other Germans, who bought on the Bierly survey when the road was running through it, and place the road on land lines.

J. W. Watkins, the next witness for the State, testified that he was the clerk of the county court of Falls county, Texas.  Witness had been unable to find the application to the commissioners' court of Falls county to change the road running from White Rock crossing on Pond creek to the Bell county line, from its course across the Bierly survey, to its course N. 30 W. with the Lawrence survey.  Witness, however, must have had such an

application before him, else he could not have formulated the order. Witness had diligently searched for such application in his office. He could not remember who signed it, nor how many signers there were to it (the application or petition), and could not now state the contents of that document, but supposes that an order followed it. Witness remembered that he saw the application, and that it was signed by more than one person.

The State then read in evidence from the records of the commissioners' court the following order appointing a jury of view on said road from White Rock crossing of Pond creek to the Bell county line. It appears on page 128 of the minutes of the commissioners' court, and reads as follows:

"On this twelfth day of February, 1883, came on to be heard the application of sundry citizens of Falls county for a change in said road, commencing at White Rock crossing on Pond creek and ending at Bell county line, as follows: Commencing at Cottonwood spring, on the west line of the Lawrence survey, to run north about two hundred yards, thence west to the Cameron and Waco road, thence southwest on the line between Buckholt and J. M. Berry to the Bell county line. It is ordered by the court that Henry Hale, L. B. Scott, E. N. May, John Hale and John Buckholt be, and they are hereby, appointed a jury of view to mark out said change in accordance with said petition, and report their action to the next term of this court."

The order of said court, approving said report and ordering the opening of the said road, appears on page 204 of the minutes, and reads as follows:

"On this, the fifteenth day of May, 1883, came on to be heard the report of the jury of view appointed at a former term of this court to mark out a change in the road from White Rock crossing on Pond creek to the Bell county line. The said report reads as follows: 'Commencing at White Rock crossing road, thence N. 30 W. with the Lawrence survey to N. E. corner of a survey for S. J. Rollowitz out of Bierly survey; thence west to the division line of the Bierly survey; thence with the division line to the corner between Buckholt's north line to the west line of the Bierly survey; thence north to the N. E. corner of M. Hunt survey; thence W. to the Bell county line.' Said report having been heard, and no protest having been filed, it was ordered by the court that the report be adopted, and the overseer of said road is ordered to open said road in conformity to this report."

John Buckholt was the next witness who was called and testified for the State. He stated that as the line of the Lawrence survey was located, or ascertained by a survey made by the county surveyor some three years before this trial, the defendant's fence mentioned by the witness Lee would be two feet over on the Bierly survey. Witness was one of the jury of view on the said change of the White Rock crossing and the Bell county line road, from its course across the Bierly survey (and over witness's land) to the course with the Lawrence survey N. 30 W. Only three of the jury signed the report. The jury made no marks on the ground designating the road. They took no oath on entering upon their duties. After discharging the duty imposed upon them by their appointment, three of the jury went before J. M. Killen, justice of the peace, wrote out and signed and were qualified to their report. Witness did not know what was the form or substance of the oath they took on signing their report. This was the only oath the members of the jury took during the proceedings. This road was the same one that was mentioned in the indictment. Witness knew that the defendant put up such a fence as was mentioned by the witness Lee, and at the time stated by Lee.

The State was permitted, over the objection of the defense, to read in evidence the following report:

"THE STATE OF TEXAS, }
    "COUNTY OF FALLS.     }

"We, the undersigned, jury of review appointed by the commissioners' court at Marlin, Falls county, Texas, at the February term of said court, to change a road from the west line of the Lawrence survey on White Rock crossing road to the Bell county line, commencing at the White Rock crossing road, thence N. 30 W. with the Lawrence survey to the N. E. corner of a survey for A. J. Rollowitz out of the Bierly survey; thence north with the division line to the corner between Buckholt and Berry; thence west with Buckholt's north line to the west line of the Bierly survey; thence north to the northeast corner of the Memican Hunt survey; thence west to the Bell county line. Hoping the above report sufficient, we remain,

"Your obedient servants,

"J. G. BUCKHOLT,
"L. B. SCOTT,
"J. H. HALE,
            "Reviewers.

"Sworn to and subscribed before me, this April 30, 1883.

　　　　　　　　　　　　　　　　" J. M. Killen, J. P."

The substance of the testimony of the witness Lee was repeated by three other witnesses.

The charge of the court requested by the defendant and refused by the court, which is the subject matter of ruling embraced in the third head note of this report, reads as follows:

" The defendant requested the court to instruct the jury that the jury, or a majority of them, who are appointed to lay out and mark the road are required by law to take, before entering on their duties, an oath, in substance, that they and each of them will lay out the road by the order to them directed from the commissioners' court, according to law, without favor or affection, malice or hatred, to the best of their skill and knowledge; and in this case if the jury believe that such an oath was not taken by said jury of view, or a majority of them, before acting in the performance of their duties, you will find the defendant not guilty."

The motion for new trial presented the questions considered in the opinion.

*Goodrich & Clarkson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. This appeal is from a judgment of conviction for obstructing a public road.

The mode and manner by which public roads are established in this State are prescribed by statute. (Rev. Stats., Arts. 4359 to 4390, inclusive.) One of the prerequisites is that the jurors appointed to lay out the road shall, before proceeding to act as such, take the oath prescribed by the statute. (Rev. Stats., Art. 4368.) The rule is well established that, in order to condemn private property to public uses, the law authorizing and directing it must be strictly observed and pursued, and the doing of what the law requires is a condition precedent to the authority to condemn. (White & Willson's Cond. Cases, sec. 393.) A public road cannot be laid out and established without the requirements of the law in such cases having been first complied with. (*Floyd* v. *Turner*, 23 Texas, 292.)

In this case the jurors appointed to lay out the road did not

take the statutory oath before acting in the premises, nor did they ever take that particular oath. This oath was an essential prerequisite to the validity of their action. Where proceedings are summary, and a court proposes to exercise an extraordinary power under a special statute prescribing its course, that course ought to be exactly observed. (*Mitchell* v. *Runkle*, 25 Texas Supp., 132.) The court erred in refusing to give to the jury the special requested instruction asked on this point by defendant.

Conceding, however, for the sake of argument, that the oath had been properly taken by said jury, and we would still consider the evidence as insufficient to support the judgment. It is testified by the witness Lee, the road overseer, that the obstruction complained of was " a wire fence running along and in and with the road, the fence being on the Lawrence survey, about two hundred yards in length." This Lawrence survey belonged to and was owned by appellant. The report of the jury appointed to locate and lay out the road was as follows, viz: "Commencing at White Rock crossing, thence north 30 degrees west, with Lawrence survey to northeast corner of survey for S. J. Rollowitz, out of Bierly survey; thence west," etc.

Now, if appellant's fence was, as the witness Lee stated, on the Lawrence survey, it could not have been in a road running north 30 degrees west with the line of that survey.

Because of error in the charge of the court, and because the evidence is insufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 28, 1884.